**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Smarthealth Incorporated, | No. CV-25-00115-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Chemotechnique MB Diagnostics AB, *et al.*, | |
| Defendants. | |

At issue is Plaintiff SmartHealth Incorporated's Motion to Allow Limited Jurisdictional Discovery (Doc. 19, Motion), to which Defendants Chemotechnique MB Diagnostics AB ("Chemotechnique") and Dormer Laboratories Incorporated ("Dormer") filed a Response (Doc. 26, Response) and Plaintiff filed a Reply (Doc. 27, Reply). The Court finds this matter appropriate for resolution without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court grants Plaintiff's Motion.

**I.      Background**

Chemotechnique, a Swedish entity, filed a motion to dismiss Plaintiff's claims against it for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). (*See* Doc. 12.) Within the responsive timeline for that motion, Plaintiff filed the instant Motion, wherein Plaintiff argues that it must be permitted to conduct limited jurisdictional discovery if it is to meaningfully respond to Chemotechnique's jurisdictional motion. Plaintiff also sought a stay of the briefing deadlines for Chemotechnique's jurisdictional motion, which the Court granted. (*See* Doc. 22.) Separately, Defendants sought a stay of

all discovery in this case pending resolution of Chemotechnique's jurisdictional motion and Dormer's 12(b)(6) motion, which stay the Court granted. (*See* Doc. 25.) The Court must now decide whether to amend the stay of discovery for the purpose of permitting the limited jurisdictional discovery sought by Plaintiff.

Chemotechnique's jurisdictional motion is supported by 134 pages of attached documentation purportedly showing that Chemotechnique's contacts with Arizona and the United States are insufficient to support personal jurisdiction in this forum or any other forum in the nation. (*See* Doc. 12-1.) Plaintiff's argument, reduced to its essence, is that this documentation is incomplete and fails to paint a sufficiently holistic picture of Chemotechnique's contacts with Arizona and the United States. (*See* Motion at 2 ("For example, the declaration fails to address the sales volume of Chemotechnique products into the forums, only selectively addresses Chemotechnique's contacts, does not fully describe the extent of its relationships with and support of American professional societies and other groups located in the United States, and in many cases is controverted by publicly available information.").)

Plaintiff seeks relief in the form of an Order permitting it to "issue written discovery requests and take a deposition narrowly tailored to the nature, frequency and scope of Chemotechnique's contacts with the forums and to respond to the assertions in the declaration submitted by Chemotechnique." (Motion at 3.)

**II.   Legal Standard**

District courts are "vested with broad discretion to permit or deny discovery," and "discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (quoting *Butcher's Union Loc. No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)). "Where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006)

(quoting *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 562 (9th Cir.1995)). "Although a refusal to grant discovery to establish jurisdiction is not an abuse of discretion when 'it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction,' discovery should be granted when . . . the jurisdictional facts are contested or more facts are needed." *Laub*, 342 F.3d at 1093 (quoting *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir.1977)).

The crux of any dispute over the propriety of limited jurisdictional discovery is whether the party seeking discovery has "provid[ed] an explanation of how discovery might change the outcome of the Court's jurisdictional findings." *See Hernandez v. Mimi's Rock Corp.*, 632 F. Supp. 3d 1052, 1062 (N.D. Cal. 2022). Where such showing is made, discovery is proper. Where such showing is absent, the discovery request is tantamount to a fishing expedition. *See LNS Enters. LLC v. Cont'l Motors Inc.*, 464 F. Supp. 3d 1065, 1078 (D. Ariz. 2020) (denying a request to conduct limited jurisdictional discovery because the plaintiffs failed to "provid[e] any affidavit or evidence substantiating their requests or describe[e] with any precision how such discovery would be helpful to the Court.").

Much of the parties' dispute, and thus much of the Court's analysis, centers upon the question of whether personal jurisdiction exists under Federal Rule of Civil Procedure 4(k)(2), which provides for personal jurisdiction in American fora even in the absence of ordinary personal jurisdiction in any particular American forum. *See* Fed. R. Civ. P. 4(k)(2) ("For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if the defendant is not subject to jurisdiction in any state's courts of general jurisdiction and exercising jurisdiction is consistent with the United States Constitution and laws." (cleaned up)). Defendants[1] cite an unreported district-court case holding that a plaintiff may only resort to Rule 4(k)(2) when a defendant's contacts with the United States are "unusually extensive." (Response at 6 & n.3 (citing *AMA Multimedia LLC v. Wanat*, No. CV-15-01674-PHX-ROS, 2017 WL

---

[1] Although the jurisdictional motion to dismiss was filed by Chemotechnique alone, (*see* Doc. 12), Defendants have jointly responded to the instant Motion for limited jurisdictional discovery.

- 3 -

5668025, at *5 (D. Ariz. Sept. 29, 2017)).) Plaintiff argues that that proposition is no longer true, as four years later the Ninth Circuit held that "Rule 4(k)(2) is not disfavored in this Circuit. [Although] courts have rarely exercised jurisdiction under 4(k)(2), . . . this rarity simply reflects that situations where a defendant has the requisite contacts with the United States but not with any one state are unusual. The rarity of the rule's applicability does not indicate that Rule 4(k)(2) imposes a higher standard for due process." *See Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 978 n.1 (9th Cir. 2021). Defendants contend that *AMA*'s "unusually extensive" criterion is somehow consistent with *Ayla*'s subsequent clarification that Rule 4(k)(2) does not impose a higher due-process standard on the assessment of a defendant's contacts with the forum. (Response at 6 n.3.) Defendants' position is indefensible, as the only way in which the two cases could be consistent is if *Ayla* implicitly held that every exercise of personal jurisdiction in every case requires unusually extensive contacts with the forum state as a matter of constitutional due process, but that proposition is plainly nonsensical—as a matter of arithmetic, contacts cannot be "unusually extensive" in *every* instance.

In order to avail oneself of limited jurisdictional discovery, "[a] plaintiff must merely present a colorable basis for jurisdiction, or some evidence constituting a lesser showing than a prima facie case." *Hernandez*, 632 F. Supp. 3d at 1062 (internal quotation marks and citation omitted). In determining whether Plaintiff has presented the requisite colorable basis for jurisdiction, the Court will apply the due-process standard dictated by the Ninth Circuit, not the "unusually extensive" criterion advanced by Defendants.

**III.     Discussion**

In its jurisdictional motion, Chemotechnique asserts that personal jurisdiction is absent here because it does not directly sell its allergenic products in the United States, as such products are sold exclusively through its distributor, Dormer. (Doc. 12 at 2–3.) That point is not disputed. Neither are the facts that Chemotechnique has no office in the United States, employs no personnel in the United States, maintains no bank accounts in the United States, owns no property in the United States, and pays no taxes in the United States. What

*is* at issue is the extent to which Chemotechnique oversees Dormer's marketing and distribution of its products in the United States, as well as the extent to which Chemotechnique directly markets its products to consumers in the United States. Chemotechnique claims that its involvement in the marketing, distribution, and sale of its products in the United States is essentially nonexistent. (Doc. 12 at 3.) Insofar as Chemotechnique concedes that it engages in marketing activities, it contends that those activities are global in nature and cannot support jurisdiction in any forum in the United States. (Doc. 12 at 3.) Plaintiff disagrees.

Plaintiff asserts that Chemotechnique takes an active role in marketing its products in the United States, including its "American Core Series," which Plaintiff alleges Chemotechnique developed specifically for sale in the United States. Plaintiff argues that Chemotechnique's jurisdictional motion and accompanying declaration misrepresent and/or insufficiently describe several material factual issues.

Plaintiff argues that discovery is needed to ascertain the extent of Chemotechnique's business activities in Arizona and the United States. (Motion at 7–8.) Although Chemotechnique states in its jurisdictional motion that it does not know how much of its product is sold in Arizona, (*see* Doc. 12 at 3), Plaintiff presents evidence indicating that Chemotechnique cannot possibly be ignorant of its sales volume in the United States as a whole. Specifically, Plaintiff cites evidence indicating (1) that Chemotechnique has issued financial statements recognizing that the United States is an important market and that a substantial portion of Chemotechnique's total sales are transacted in American dollars and (2) that Chemotechnique has on two occasions anointed Dormer its "distributor of the year," which, in light of Dormer's status as distributor only in the United States and Canada, implies that the United States constitutes a substantial component of Chemotechnique's global market. Plaintiff cites *Ayla* for the proposition that "[a] foreign defendant's sales into the United States are highly relevant to establishing jurisdiction" and that "a 10% U.S. sales volume compared to the defendant's other worldwide sales supported exercising personal jurisdiction over a foreign defendant under Rule 4(k)(2)."

(Motion at 8.) The Ninth Circuit's holding in *Ayla* is not quite as Plaintiff describes it. Rather than holding that a 10% sales volume is so large that it supports jurisdiction, the Ninth Circuit actually held that a 10% sales volume is not so small that it precludes jurisdiction where there exist other indicia of targeting. 11 F.4th at 981 (concluding that "Alya Skin's argument that its United States sales are '*de minimis*' and preclude the exercise of jurisdiction therefore fails"). There is also nothing special about the quantum of 10%. For instance, *Ayla* cites to a Supreme Court opinion in which the high court held that a sales volume of less than one percent is sufficient for jurisdiction in the presence of purposeful direction of conduct to the forum. *Id.* (citing *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770 (1984)).

Defendants cite *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011), for the proposition that "selling through a distributor is insufficient to establish personal jurisdiction," (Response at 7), but Defendants omit a crucial qualifier from that opinion. The Supreme Court actually held that selling through a distributor is insufficient to establish personal jurisdiction where the seller "at no time . . . advertised in, sent goods to, or in any relevant sense targeted the [forum]." *J. McIntyre*, 564 U.S. at 877. Here, Plaintiff asserts that Chemotechnique *has* targeted the United States. Therefore, *J. McIntyre* is inapposite. *See id.* at 882 ("The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum [].").

Thus, in light of the foregoing, the Court concludes that Chemotechnique's U.S. sales volume is not an important fact in the jurisdictional analysis, at least not in general, as it is not meaningfully contested that Chemotechnique sells more than a *de minimis* amount of allergenic product in the United States. Chemotechnique's U.S. sales volume, considered in a vacuum, will neither confer nor preclude jurisdiction. However, as explained below, Chemotechnique's U.S. sales volume is relevant to the targeting inquiry due to a unique factual wrinkle of this case, not in the *ipso facto* manner asserted by

1  Plaintiff. Plaintiff next contends that limited jurisdictional discovery is necessary to
2  uncover the true extent of Chemotechnique's involvement in the marketing and distribution
3  of its allergenic products in the United States. (Motion at 9–11.) Although Plaintiff's
4  Motion expressly derogates this argument to a position of secondary importance, (*see*
5  Motion at 6), this point is actually of primary significance. As noted, the mere volume of
6  Chemotechnique's sales in the United States is less relevant to the jurisdictional inquiry
7  than the extent of Chemotechnique's targeting of the U.S. market.

8  Plaintiff presents several evidentiary arguments purportedly establishing that
9  Chemotechnique's jurisdictional motion understates the scope of its marketing activities
10 directed at the United States. Plaintiff asserts that Chemotechnique's development of an
11 "American Core Series" of allergens by itself constitutes targeting of the United States.
12 Plaintiff argues that that product line cannot reasonably be understood to refer to North
13 America generally, as Chemotechnique advertises it in its newsletter alongside an image
14 of Abraham Lincoln. Plaintiff also asserts that Chemotechnique advertised its American
15 Core Series in social and other media referring to the product line as "national" and
16 "country-specific," thereby implying that Chemotechnique developed the series with the
17 U.S. market in mind, not some larger continental market. Insofar as Chemotechnique's
18 advertisements *can* be construed as referencing North America, Plaintiff contends (1) that
19 jointly targeting the United States and Canada still constitutes targeting of the United States
20 sufficient to permit jurisdiction and (2) that discovery into the relative sizes of the U.S. and
21 Canadian markets is appropriate to determine whether, practically speaking, the U.S.
22 market in fact comprises the North American market. (Motion at 10–11 & n.9.)

23 Plaintiff also questions whether Chemotechnique's jurisdictional motion and
24 accompanying declaration reveals the full extent of Chemotechnique's interaction with
25 U.S. industry groups. (Motion at 11–13.) Although Chemotechnique admits attending
26 occasional trade events in the United States, as it does around the world, it denies that it
27 conducts any U.S.-specific marketing activities at these events. Plaintiff, on the other hand,
28 contends that Chemotechnique utilizes these industry events to, *inter alia*, negotiate the

- 7 -

price of its products with members of the North American Contact Dermatitis Group—an organization that Chemotechnique is intimately involved with, as evidenced by its recognition on its website that it develops its allergenic products based upon the stated needs of the group. Plaintiff supports the allegation of price negotiation with the declaration of Dr. Dathan Hamann. (*See* Doc. 19-5 ¶¶ 4–5.)[2] Plaintiff also argues that "even taking Chemotechnique's allegations as true that it does not sell products at those trade shows, a common purpose of those trade shows is to build good will and establish new business relationships with consumers in the relevant market, leading to future sales." (Motion at 13.) In support of that contention, Plaintiff notes that Chemotechnique is a "platinum-level" donor to such trade shows.

Plaintiff further argues that limited jurisdictional discovery is necessary to determine whether Chemotechnique is as ignorant of the U.S. advertisements pushing its product as Chemotechnique claims to be. Plaintiff contends that it is implausible that Chemotechnique is not directing, or at least approving, advertisements of its product in trade publications issued by entities with which Chemotechnique regularly interacts. (Motion at 12–13.) Finally, Plaintiff argues that, assuming *arguendo* that Dormer is responsible for all of the trade-show marketing described above, then the Court should permit discovery into the contractual relationship between Chemotechnique and Dormer. "For example, if the Defendants have an agreement whereby Dormer is responsible for all marketing at the trade shows but Chemotechnique gives it a budget for these and similar marketing endeavors, that would be a jurisdictionally-relevant fact that [Plaintiff] should be allowed to discover." (Motion at 13.)

In response, Defendants write that "[Plaintiff] argues that Chemotechnique's marketing and advertising are sufficient for personal jurisdiction, but the supposed evidence it puts forward comes nowhere near showing that." (Response at 9.) This argument misses the point. In seeking leave to conduct limited discovery into the basis of

---

[2] Defendants argue that Dr. Hamann's declaration lacks foundation. (Response at 10). Although the Court agrees that the declaration's foundation is sloppily presented and must be assembled from scattershot assertions made throughout the document, the Court disagrees that it is wholly absent.

- 8 -

personal jurisdiction, Plaintiff does not need to establish the propriety of personal jurisdiction. Defendants' contention that jurisdiction is absent here is therefore of no import, as it would be nonsensical to require that Plaintiff demonstrate the validity of jurisdiction as a precondition to conducting discovery into whether jurisdiction is valid. All that is required here is a showing of some colorable basis for jurisdiction and a demonstration that some facts material to the jurisdictional analysis are either controverted or unclear. *See Hernandez*, 632 F. Supp. 3d at 1062; *see also Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 674 (S.D. Cal. 2001) ("To defeat the discovery sought here, Defendant[s] must meet the relatively high burden of establishing that it is clear that further discovery would *not* demonstrate facts sufficient to constitute a basis for jurisdiction." (internal quotation marks and citation omitted)).

Although much of Plaintiff's Motion, like Defendant's Response, constitutes an argument that the Court ought to find jurisdiction on the facts as they currently stand, the Court nevertheless finds that Plaintiff has identified a colorable basis for jurisdiction, as well as at least three specific factual reasons that limited jurisdictional discovery is appropriate here. First, Plaintiff has plainly presented a colorable basis for jurisdiction, namely Chemotechnique's alleged targeting of the U.S. forum. Plaintiff has averred that Chemotechnique deliberately designed a line of products for the U.S. market and then directly and/or indirectly advertised and distributed those products in the United States. Although that allegation might not be true, it is unquestionably colorable. Second, Plaintiff has identified the following factual questions for which limited discovery is necessary: (1) the relative sizes of Chemotechnique's U.S. market and whatever other national markets Chemotechnique claims are the object of the American Core Series;[3] (2) the extent and nature of Chemotechnique's attendance of trade shows in the United States and Arizona; and (3) the extent and nature of Chemotechnique's supervision of Dormer's

---

[3] This conclusion is not inconsistent with the Court's prior conclusion that Chemotechnique's U.S. sales volume is unimportant to the jurisdictional inquiry as a general matter. Here, the Court finds that Chemotechnique's U.S. sales volume is material because, insofar as it is undisputed that Chemotechnique targets North America and/or the Americas, a showing that the U.S. market constitutes an overwhelming preponderance of those larger geographic aggregations could support an exercise of jurisdiction.

- 9 -

marketing and distribution activities relating to the sale of Chemotechnique's allergenic products in the United States and Arizona. The Court finds unpersuasive Defendants' contentions that the above-listed factual questions are immaterial. Limited jurisdictional discovery is thus warranted.

Finally, Defendants argue that Plaintiff's proposed discovery is overbroad and unduly burdensome in a variety of ways. (Response at 11–13.) Defendants contend that discovery on Dormer is unnecessary, as any information relevant to Chemotechnique's alleged targeting of the American forum must of necessity be held by Chemotechnique itself, such that similar requests issued to Dormer would be duplicative and purposeless. Defendants also assert that Plaintiff's request for publicly available information, such as screenshots of Chemotechnique's social media posts, is unduly burdensome in light of the fact that Plaintiff can already access such information itself. The Court agrees with both of these arguments, neither of which Plaintiff responds to. (*See* Reply at 10–11.)

Defendants also contend that the identities of the employees who attend trade shows in the United States are irrelevant, but the Court disagrees. The identify, status, and job description of the employees who have attended trade shows in the United States is plainly relevant to the issue of whether Chemotechnique has targeted the United States. Defendants also contend that some of Plaintiff's proposed requests for production are duplicative of some of its interrogatories. The Court agrees with this argument, to which Plaintiff offers no response. Defendants also assert that Plaintiff's proposed discovery is overbroad in that it contains no temporal limitation. This is false, as each of Plaintiff's proposed discovery requests states that "[u]nless otherwise designated, each [discovery item] requests information and/or documents from 2015 to the present." (See Doc. 19-1 ¶ 12; Doc. 19-3 ¶ 12.) Curiously, Plaintiff makes the equally false statement that "Chemotechnique ignores the Definitions and Instructions that limit the discovery requests to a five-year time period unless otherwise designated." (Reply at 10.) As the parties appear to be in agreement that a five-year limitation is appropriate, the Court holds that a five-year limitation is appropriate. Defendants also contend that any discovery request seeking worldwide sales

- 10 -

information is overbroad. The Court agrees, except insofar as such information bears upon the question of whether Chemotechnique's American Core Series is targeted at the United States, North America, North and South America, or some other geographic subset of the New World.

Defendants conclude their Response by writing that "[a]t most, Defendants contend discovery requests should be to Chemotechnique only and should be limited to the distribution agreements between Chemotechnique and Dormer and their respective roles in creating, marketing, and selling the Allergen Products in the United States over the last five years, and the trade shows and conferences within Arizona and/or the United States that Chemotechnique has attended in the last five years related to the Allergen Products." With the caveats described above, the Court finds Defendants' contention reasonable, and the Court further notes that Plaintiff did not meaningfully contest the limitation requested by Defendants.

**IT IS THEREFORE ORDERED** granting Plaintiff's Motion to Allow Limited Jurisdictional Discovery (Doc. 19), subject to the limitations described hereinabove.

**IT IS FURTHER ORDERED** lifting the stay on discovery insofar as is necessary to effectuate the limited jurisdictional discovery granted hereby and lifting the stay on Plaintiff's timeline for filing a responsive memorandum to Chemotechnique's motion to dismiss. Within **sixty** days from the date of this Order, Plaintiff shall file either its responsive memorandum or a motion for extension of time to complete the limited jurisdictional discovery.

**IT IS FURTHER ORDERED** that the following procedures shall apply to the limited jurisdictional discovery. The parties shall not file written discovery motions without leave of the Court. Except during a deposition, if a discovery dispute arises and cannot be resolved despite sincere efforts to resolve the matter through personal consultation (in person or by telephone), the parties shall jointly file (1) a brief written summary of the dispute, not to exceed one page per side, with an explanation of the position taken by each side; and (2) a joint written certification that counsel or the parties have

attempted to resolve the matter through personal consultation and sincere effort as required by Local Rule of Civil Procedure 7.2(j) and have reached an impasse. If the opposing party has refused to personally consult, the party seeking relief shall describe the efforts made to obtain personal consultation. Upon review of the filed written summary of the dispute, the Court may set a telephonic conference, order written briefing, or decide the dispute without conference or briefing. Any briefing ordered by the Court shall also comply with Local Rule 7.2(j). If a discovery dispute arises in the course of a deposition and requires an immediate ruling of the Court—a circumstance that should be exceedingly rare—the parties shall jointly contact the Court telephonically. The Court will not entertain discovery disputes after the close of discovery absent truly extraordinary circumstances.

Dated this 17th day of June, 2025.

Honorable John J. Tuchi
United States District Judge