**WO**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Smarthealth Incorporated, | No. CV-25-00115-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Chemotechnique MB Diagnostics AB, *et al.*, | |
| Defendants. | |

At issue is Defendant Chemotechnique MB Diagnostics AB's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and Joinder in Dormer Laboratories Inc.'s Motion ("Motion to Dismiss") (Doc. 12, Mot.), to which Plaintiff Smarthealth Incorporated responded (Doc. 45, Resp.), Chemotechnique replied (Doc. 51, Reply), and both parties sur-replied. (Docs. 56–57). The Court finds this matter appropriate for resolution without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court denies Chemotechnique's Motion to Dismiss.

## I.      BACKGROUND

Smarthealth, also known as "SmartPractice," is an Arizona entity that manufactures and sells patch tests to diagnose allergic contact dermatitis. (Doc. 36, FAC, ¶¶ 6, 33, 36.) Generally, patch tests are comprised of an allergen, also called a "hapten," and a chamber that is applied to the skin and directly delivers the allergen. (*Id*. ¶ 29.) Chemotechnique, a Swedish entity, manufactures its own allergens and chambers for patch testing. (*Id*. ¶¶ 2–3.) Allergens must be licensed by the Federal Drug Administration ("FDA") to be legally

sold and distributed in the United States. (*Id.* ¶ 31.) Smarthealth's products are licensed by the FDA (*id.* ¶ 33, 36), but Chemotechnique's products are not (*id.* ¶¶ 2–4).

Chemotechnique maintains no place of business in the United States. (Doc. 12-1, Def. Decl., ¶ 5.) It has no employees, bank accounts or property in the United States. (*Id.* ¶¶ 5–6.) It does not pay taxes, register to do business, or maintain sales contracts with anyone in the United States. (*Id.*) Its products are distributed to the United States by a Canadian-based distributor, Dormer, which also distributes the products in Canada. (*Id.* ¶ 9.) In addition to distributing Chemotechnique's products, Dormer also markets the products at trade shows, on its interactive website, and in publications. (*See* FAC ¶¶ 42, 45, 50, 53, 58, 60, 70, 72, 74, 76.)

Chemotechnique's business developer, David Alsheimer-Niklasson, avers that Chemotechnique has no involvement in or control over Dormer's marketing materials and website that Dormer uses to sell its products. (Def. Decl. ¶¶ 10–13.) Chemotechnique's only independent marketing efforts, according to Mr. Alsheimer-Niklasson, include maintaining a passive, informational website, circulating a quarterly e-newsletter to subscribers around the world, and posting on social media accounts. (*Id.* ¶ 15.) Mr. Alsheimer-Niklasson also acknowledges that, in the last decade, Chemotechnique's staff attended eight trade shows held in major U.S. cities where members of industry-leading groups meet and lecturers share relevant research. (*Id.* ¶ 16.) At these trade shows, Chemotechnique "distributes its yearly product catalogue and leaflet to international participants," examples of which are attached to Mr. Alsheimer-Niklasson's declaration. (*Id.* ¶ 18; *see id.* at 11–112, 128–34.)

Smarthealth sued Chemotechnique and Dormer on three claims: (1) false advertising under the Lanham Act; (2) common law unfair competition; and (3) tortious interference with contractual relations. (FAC ¶¶ 101–17.) The crux of Smarthealth's claims is that Chemotechnique and Dormer are using false or misleading statements in their advertisements that give consumers the wrong impression that Chemotechnique's products are licensed by the FDA for sale in the United States. (*Id.* ¶¶ 1–5.) Chemotechnique now

moves to dismiss Smarthealth's claims for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

## II.        LEGAL STANDARD

For a federal court to adjudicate a matter, it must have jurisdiction over the parties. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). There are two types of personal jurisdiction: general and specific. General jurisdiction is not at issue here. (*See* Resp. at 13–14 (Smarthealth conceding that there is no general jurisdiction over Chemotechnique in Arizona).) Neither is specific jurisdiction within a particular state at issue. (*See id*. at 2 n.2 (Smarthealth conceding that Chemotechnique has no contacts with Arizona).) Rather, Smarthealth argues that this Court has nationwide specific jurisdiction over Chemotechnique pursuant to Federal Rule of Civil Procedure 4(k)(2), known as the "federal long-arm statute." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006).

Rule 4(k)(2) establishes personal jurisdiction over a defendant if the following three conditions are met: (1) the claims arise under federal law; (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (3) exercising jurisdiction comports with due process. *Id*.; *see* Fed. R. Civ. P. 4(k)(2).

Due process requires that a non-resident, non-consenting defendant have sufficient minimum contacts with the forum so that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation modified). The focus of this analysis is "on the relationship among the defendant, the forum, and the litigation." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 750 (9th Cir. 2025). Whether a defendant has sufficient minimum contacts with the forum[1] turns on three elements. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017). First, the defendant "must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he

---

[1] The due process analysis under Rule 4(k)(2) "is nearly identical to traditional personal jurisdiction analysis but rather than considering contacts between the defendant and the forum state, we consider contacts with the nation as a whole." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021) (citation modified).

purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Id.* Second, "the claim must be one which arises out of or relates to the defendant's forum-related activities." *Id.* And third, "the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable." *Id.* The plaintiff bears the burden of satisfying the first two elements while the defendant bears the burden of negating the third. *Id.* All three elements are required for jurisdiction to lie. *Id.*

At the motion to dismiss stage, "the plaintiff bears the burden of demonstrating that the court has jurisdiction" and *"*need only make a prima facie showing of jurisdictional facts to withstand the motion" when, as here, no evidentiary hearing is held. *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015). The facts alleged in the complaint are generally accepted as true unless controverted by affidavit. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977). But when facts contained in the parties' affidavits conflict, that conflict must be resolved in the plaintiff's favor. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (citation omitted).

## III.    ANALYSIS

Neither party contests that the first two conditions of Rule 4(k)(2)—that the claims arise under federal law and that Chemotechnique is not subject to any state court's jurisdiction—are met.[2] Rather, the parties sharply contest whether jurisdiction meets the due process standard under the minimum contacts test.

### A.    Purposeful Direction

To meet the first element of the minimum contacts test, the plaintiff must show the defendant "either (1) purposefully availed himself of the privilege of conducting activities

---

[2] Even if they had, this action plainly arises under federal law—the Lanham Act—and the record indicates that Chemotechnique is not subject to the general jurisdiction of Arizona or anywhere else in the United States. (*See* Def. Decl. ¶¶ 4–7.) Chemotechnique could avoid Rule 4(k)(2) jurisdiction only by designating a suitable state forum in which Smarthealth could have sued, but it does not attempt to do so at all. *Fitbit, Inc. v. Koninklijke Philips N.V.*, 336 F.R.D. 574, 582 (N.D. Cal. 2020) (citing *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283 (Fed. Cir. 2012)).

in the forum, or (2) purposefully directed his activities towards the forum." *Pebble Beach Co.*, 453 F.3d at 1155 (citation modified). When, as here, a plaintiff's claims sound in tort, courts apply the purposeful direction test. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F. 4th 1085, 1091 (9th Cir. 2023) (applying the purposeful direction test to false advertising and tortious interference claims).

To determine whether the defendant's actions constitute purposeful direction, courts apply the "effects" test developed in *Calder v. Jones*, 465 U.S. 783, 789–90 (1984). The *Calder* test requires that "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (citation modified). "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects [it] to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). In other words, the relationship between the defendant, the forum state, and the litigation "must arise out of contacts that the defendant *himself* creates with the forum State" and not just "the defendant's contacts with persons who reside there." *Id.* at 284–85 (emphasis in original). Mere foreseeability that the forum will be affected is insufficient to satisfy the *Calder* test—rather, there must be "something more." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 805 (9th Cir. 2004); *Herbal Brands, Inc.*, 72 F.4th at 1092; *accord Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 111 (1987) (plurality opinion).

Smarthealth lists many examples of what it believes to be Chemotechnique's contacts with the United States. The Court will address only one. Mr. Alsheimer-Niklasson declared that Chemotechnique's staff "distributes its yearly product catalogue and leaflet" at trade shows held in the United States. (Def. Decl. ¶¶ 16–18.) Chemotechnique has attended eight of these trade shows in the last decade (*id.* ¶ 16), some of which are led by the American Contact Dermatitis Society ("ACDS") whose membership, according to Smarthealth's evidence, is almost exclusively based in the United States (Resp. at 4–5;

Doc. 45-3 ¶¶ 3–11). The product catalogue and leaflet clearly market Chemotechnique's products, indicate distribution capability to the United States and, most importantly, bear the same purportedly false or misleading language that form the basis for Smarthealth's claims, including the phrases "high quality," and "most advanced." (*Compare* FAC ¶ 58 *with* Def. Decl. at 13, 134; *compare* FAC ¶ 74 *with* Def. Decl. at 131.) These are precise phrases that, according to Smarthealth, deceived professionals in the United States into purchasing Chemotechnique's products "believing them to have the same approvals, and to have undergone the same rigorous safety and efficacy testing, as [Smarthealth's] FDA-approved and cleared products." (FAC ¶ 93.) According to Smarthealth, it lost revenue and market share because of Chemotechnique's marketing. (*Id.* ¶¶ 94–95.) Smarthealth alleges, and Chemotechnique does not controvert, that Chemotechnique was "informed of the false and misleading nature of their advertisements and the unfair nature of their competition against SmartPractice." (*Id.* ¶ 97.)

The first *Calder* element[3] requires that an act is intentional, which "has a specialized meaning" in the context of specific personal jurisdiction and refers "to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger,* 374 F.3d at 806. Chemotechnique admits that its staff physically distributed material that contained the allegedly false or misleading statements in the United States, so the act was plainly intentional.

Under the second *Calder* element, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290. Here, Chemotechnique's staff traveled to the United States almost every year for the last decade and physically distributed its own marketing material at major industry events. The evidence demonstrates that some of these events are led by a group of predominantly U.S.-based medical professionals. (*See*

---

[3] Neither party directly applies the *Calder* elements to Chemotechnique's distribution of product catalogs and leaflets specifically; they focus on many other purported contacts that Chemotechnique has with the United States. Still, it was Chemotechnique that verified this activity and attached an example of its marketing material to its' business developer's declaration. Consideration of that activity and that material is fairly before the Court, and both parties have had a full and fair opportunity to address it.

Doc. 45-3 ¶¶ 3–11.) Chemotechnique's nearly annual distribution of advertisements at major meetings and events held by a predominantly U.S.-based group enables Chemotechnique to directly market its products to an audience that is acutely interested in contact dermatitis diagnostic tools in the United States. This conduct is intentional, meaningful, and directly connects Chemotechnique to the United States.

The third *Calder* element requires the act to cause harm that Chemotechnique knew was likely to be suffered in the United States. First, Chemotechnique clearly knew its staff distributed marketing materials while physically present in the United States; Mr. Alsheimer-Niklasson admits as much in his declaration. (Def. Decl. ¶ 18.) Second, the marketing materials manifestly contain statements that Smarthealth alleges are false or misleading. (*See, e.g.*, *id.* at 13, 131, 134.) Third, Smarthealth alleges, and Chemotechnique does not refute, that Chemotechnique was notified that statements used in its marketing material were false or misleading. (FAC ¶ 97.) *Data Disc.*, 557 F.2d at 1284 (holding that the facts alleged in the complaint are generally accepted as true unless contradicted by affidavit). It is reasonable to infer from these facts that Chemotechnique knew that consumers who received marketing material in the United States may rely upon false or misleading statements of Chemotechnique's products. This is precisely the harm that Smarthealth allegedly suffers because of, in part, Chemotechnique's marketing at these trade shows.

Chemotechnique argues that its attendance at trade shows is insufficient to establish personal jurisdiction and cites to *Holland American Line, Inc. v. Wartsila North America, Inc.*, 485 F.3d 450, 460 (9th Cir. 2007). In *Holland*, the plaintiff sued defendants for negligent inspection of the plaintiff's ship that was destroyed in an engine fire off of Tahiti. *Id.* at 453–54. The only connection that the defendants had to the United States was that they "occasionally visited cruise ships" and advertised in publications that "incidentally" made their way into the forum. *Id.* at 460. But these contacts were completely disconnected from the claims at issue. Here, Chemotechnique's contacts are distinguishable. It did not merely attend trade shows; rather, it intentionally distributed advertisements containing

allegedly false or misleading statements that are the crux of the claims *while* it attended trade shows. This clear and meaningful connection between the act, the forum, and the claims at bar was missing in *Holland*, but it is present here.

Chemotechnique also implies that personal jurisdiction under Rule 4(k)(2) needs to be "sufficiently extensive to warrant invoking this exceptional rule." (Mot. at 5–6.) But this Circuit imposes no higher standard for a non-resident's minimum contacts than what is traditionally applied in the specific jurisdiction analysis. *Ayla, LLC*, 11 F.4th at 978 n.1.

Having met each element of the *Calder* test, Chemotechnique's contact with the United States is the "something more" that is required for the purposeful direction test. Accordingly, Smarthealth meets the first element of the minimum contact test.

**B.     Nexus**

To meet the second element of the minimum contacts test, "the claim must be one which arises out of or relates to the defendant's forum-related activities." *Morrill*, 873 F.3d at 1142. This inquiry does not demand "proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 362 (2021). While "[t]he first half of that standard asks about causation . . . [] the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." *Id*. Still, the "relate to" standard "does not mean anything goes," and "relatedness requires a close connection between contacts and injury." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 506 (9th Cir. 2023) (citation modified). In the Ninth Circuit, claims sufficiently relate to a defendant's forum contacts "if similar injuries will tend to be caused by those contacts" or "the defendant should have foreseen the risk that its contacts might cause injuries like that of the plaintiff." *Id.* at 505–06.

As Chemotechnique itself asserts, "[t]his case is about alleged false advertising." (Reply at 2.) Smarthealth alleges that Chemotechnique made several statements in advertisements that led physicians and medical professionals to believe Chemotechnique's products are: "(1) legally sold in the United States; (2) proven to be safe and effective; and

- 8 -

(3) that the physician and medical personnel legally can seek federal reimbursement for [the] products if prescribed for Medicare patients." (FAC ¶ 86.) The relevant statements include: (1) the haptens are "high quality" (*id.* ¶ 58); and (2) the chambers are the "most advanced" (*id.* ¶ 74). These statements appear in the product catalog and leaflet that Chemotechnique admittedly distributes in the United States at major industry events. This act clearly arises out of and relates to Smarthealth's false advertising claims. Smarthealth satisfies the second element of the minimum contact test.

### C.    Reasonableness

Because Smarthealth satisfies the first two prongs of the minimum contacts test, the burden shifts to Chemotechnique to demonstrate a "compelling case" that exercising jurisdiction over it is unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Courts weigh seven factors to determine the reasonableness of jurisdiction over a non-resident defendant.

The first factor considers the "the extent of the defendant's purposeful interjection into the forum state's affairs." *Doe v. Deutsche Lufthansa Aktiengesellschaft*, 157 F.4th 1103, 1113 (9th Cir. 2025). The Ninth Circuit has found this factor to be "analogous to the purposeful direction factor." *Ayla, LLC*, 11 F.4th at 984. Chemotechnique fails to address this factor. In the absence of Chemotechnique's argument otherwise, the Court finds that Chemotechnique purposefully interjected itself into the affairs of the United States by virtue of purposefully directing activity at the United States. This factor weighs in favor of jurisdiction.

The second factor, which considers "the burden on the defendant of defending in the forum" *Doe*, 157 F.4th at 1113, weighs against jurisdiction, but only slightly. Chemotechnique has no agent or office anywhere in the United States. As Chemotechnique contends, it would have to travel between Sweden and Arizona or, alternatively, consult with its counsel across a nine-hour time difference. (Reply at 10.) Litigating in a foreign country is an undeniable inconvenience, but it is mitigated by modern advances in technology and this Court's frequent use of electronic or telephonic means to conduct most

proceedings like scheduling conferences or discovery disputes. *See Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988) ("[M]odern advances in communications and transportation have significantly reduced the burden of litigating in another country."); *Ayla, LLC*, 11 F.4th at 984 (noting that there are "unique burdens placed upon one who must defend oneself in a foreign legal system," but those "burdens do not outweigh the contacts on which [the plaintiff's] claims are premised").

The third factor considers "the extent of conflict with the sovereignty of the defendant's state." *Doe*, 157 F.4th at 1113. This weighs in favor of jurisdiction. Chemotechnique does not address this factor and the Court is aware of no particular conflict that adjudication in this forum creates with Sweden's sovereignty. *See, e.g.*, *id.* at 1114 (finding that a plaintiff's claims predicated on harms arising from a foreign country's laws conflicts with that country's sovereignty); *Ayla, LLC*,11 F.4th at 984 (finding that a plaintiff's claims involving only laws and activities occurring in the United States did not conflict with a foreign country's sovereignty).

The fourth factor considers "the forum state's interest in adjudicating the dispute." *Doe*, 157 F.4th at 1113. Chemotechnique argues that all Smarthealth's claims will proceed against Dormer, so the United States' interest in adjudicating this dispute does not turn on whether this Court exercises its jurisdiction over Chemotechnique. (Reply at 10–11.) The Court disagrees. The United States has an interest in protecting consumers from false or misleading advertisements; hence its Legislature enacting federal law to prohibit that conduct. *See* 15 U.S.C. § 1125(a). The fact that another party may be held accountable does not necessarily satisfy this interest *in toto*. This factor weighs in favor of jurisdiction.

The fifth factor regards "the most efficient judicial resolution of the controversy" and "focuses on the location of the evidence and witnesses." *Doe*, 157 F.4th at 1114 (citation modified). According to Smarthealth, witnesses and evidence regarding customer confusion are located in the United States. (Resp. at 17.) Smarthealth's First Amended Complaint also reflects this reality, as its claims center around U.S-based physicians' and medical professionals' impression of advertisements from Chemotechnique. This factor

weighs in favor of jurisdiction, but only slightly because it "is no longer weighed heavily given the modern advances in communication and transportation." *Doe*, 157 F.4th at 1114 (citation modified).

The sixth factor assesses "the importance of the forum to the plaintiff's interest in convenient and effective relief." *Doe*, 157 F.4th at 1113. Smarthealth argues that, without jurisdiction here, it must "pursue duplicative litigation in, presumably, a foreign court, and later pursue recognition of any judgment it obtains in order to enforce that judgment back here in the U.S." (Resp. at 17.) While certainly inconvenient, Smarthealth does not contend that the relief it would be granted in other forums would be any less effective than what it would receive here. This factor weighs in favor of jurisdiction, but only slightly for the same reason that Chemotechnique's inconvenience of litigating in a country foreign to it would weigh against jurisdiction.

Finally, the seventh factor considers "the existence of an alternative forum," which Smarthealth bears the burden of disproving. *Doe*, 157 F.4th at 1113. Smarthealth fails to do so and even presumes that it would "pursue duplicative litigation in . . . a foreign court" if this Court declines jurisdiction. In so presuming, Smarthealth alludes to the existence of a viable alternative forum. Accordingly, this factor weighs against jurisdiction.

In sum, the second and sixth factors effectively counterbalance each other, leaving only the seventh factor weighing against jurisdiction while factors one, three, four and five weigh in favor of jurisdiction. Chemotechnique fails to make a "compelling case" that jurisdiction is unreasonable here, so Smarthealth meets the third and final element of the minimum contacts test. Accordingly, Smarthealth establishes that subjecting Chemotechnique to an action in the United States "would not offend traditional notions of fair play and substantial justice." *Ayla, LLC*, 11 F.4th at 979.

## IV.    CONCLUSION

Having met all three conditions of Rule 4(k)(2), this Court can exercise personal jurisdiction over Chemotechnique. The Court will set a scheduling conference pursuant to Federal Rule of Civil Procedure 16 by separate order.

**IT IS ORDERED** denying Defendant Chemotechnique MB Diagnostics AB's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and Joinder in Dormer Laboratories Inc.'s Motion (Doc. 12).

Dated this 16th day of March, 2026.

_____
Honorable John J. Tuchi
United States District Judge