**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Smarthealth Incorporated,<br>Plaintiff,<br>v.<br>Chemotechnique MB Diagnostics AB, *et al.*,<br>Defendants. | No. CV-25-00115-PHX-JJT<br>**ORDER** |

The Court now resolves Defendant Chemotechnique MB Diagnostics AB's Motion for Reconsideration (Doc. 60), to which Plaintiff Smarthealth Incorporated responded (Doc. 64).

## I. BACKGROUND

The Court already recounted the facts that gave rise to this dispute in its earlier Order (Doc. 58). It is enough to recognize here that Smarthealth, an Arizona entity that manufactures and sells patch tests to diagnose allergic contact dermatitis, competes with Chemotechnique, a Swedish entity[1] that manufactures its own allergy testing products. Chemotechnique maintains no place of business in the United States, has no employees, bank accounts or property in the United States, and does not pay taxes, register to do business, or maintain sales contracts with anyone in the United States. Its products are distributed to the United States and elsewhere by Canadian-based distributor Dormer.

[1] Also party to this matter is Dormer Laboratories Incorporated, but its role and conduct underlying the instant action is not relevant to this Order.

Chemotechnique's business developer, David Alsheimer-Niklasson, avers that Chemotechnique has no involvement in or control over the marketing materials and website that Dormer uses to sell its products. (Doc. 12-1 ¶¶ 10–13.) Chemotechnique's only independent marketing efforts, according to Mr. Alsheimer-Niklasson, include maintaining a passive informational website, circulating a quarterly e-newsletter to subscribers around the world, and posting on social media accounts. (Doc. 12-1 ¶ 15.) Mr. Alsheimer-Niklasson also acknowledges that in the last decade Chemotechnique's staff attended eight trade shows held in major U.S. cities where members of industry-leading groups meet and lecturers share relevant research. (Doc. 12-1 ¶ 16.) At these trade shows, Chemotechnique "distributes its yearly product catalogue and leaflet to international participants," examples of which are attached to Mr. Alsheimer-Niklasson's declaration. (Doc. 12-1 at 11–112, 128–34.)

Smarthealth sues Chemotechnique and Dormer on three claims: (1) false advertising under the Lanham Act; (2) common law unfair competition; and (3) tortious interference with contractual relations. (Doc. 36 ¶¶ 101–17.) The crux of Smarthealth's claims is that Chemotechnique and Dormer are using false or misleading statements in their advertisements that give consumers the wrong impression that Chemotechnique's products are licensed by the FDA for sale in the United States. (Doc. 36 ¶¶ 1–5.) Chemotechnique moved to dismiss Smarthealth's claims for lack of personal jurisdiction (Doc. 12), to which Smarthealth responded (Resp.), Chemotechnique replied (Doc. 51), and both parties sur-replied. (Docs. 56–57).

The Court previously denied Chemotechnique's dismissal motion, finding that Smarthealth had established that this Court has personal jurisdiction over Chemotechnique based on its distribution of yearly product catalogues and leaflets at trade shows held in the United States that marketed its products as "high quality" and the "most advanced." (Doc. 58 at 5–12.)

Chemotechnique moved for reconsideration of that Order (Doc. 60) and correctly noted that this Court already determined that particular language (*e.g.*, high quality, most

advanced) was "non-actionable puffery" in a separate ruling on Dormer's dismissal motion (*see* Doc. 28). Chemotechnique argues that personal jurisdiction cannot lie based on non-actionable conduct. (Doc. 60 at 3–4.) In response, Smarthealth argues that reconsideration is not warranted because Chemotechnique's conduct still provides a sufficient basis for this Court to exercise personal jurisdiction over Chemotechnique. Maybe so, but the Court ultimately agrees with Chemotechnique that non-actionable puffery cannot form the basis of personal jurisdiction and that error warrants reconsideration of the parties' briefing. *Lerner & Rowe PC v. Brown Engstrand & Shelly LLC*, 684 F. Supp. 3d 953, 956 (D. Ariz. 2023), *aff'd*, 119 F.4th 711 (9th Cir. 2024) (granting reconsideration and noting "the decision to revise a prior order is within the Court's discretion").

The Court now considers anew the parties' briefing, including their respective papers submitted on the issue of reconsideration, and finds this matter appropriate for resolution without oral argument. *See* LRCiv 7.2(f).

## II. LEGAL STANDARD

In its prior order, the Court extensively set forth the standard governing personal jurisdiction at the dismissal stage, and those principles apply in equal force here. (Doc. 58 at 3–4.) As relevant to this Order, the parties' jurisdictional dispute turns on whether the exercise of personal jurisdiction over Chemotechnique comports with due process, or put another way, whether Chemotechnique has sufficient minimum contacts with the forum such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation modified). The focus of that analysis is "on the relationship among the defendant, the forum, and the litigation." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 750 (9th Cir. 2025).

Whether a defendant has sufficient minimum contacts with the forum turns on three elements. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017). First, the defendant "must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and

protections of its laws." *Id.* Second, "the claim must be one which arises out of or relates to the defendant's forum-related activities." *Id.* And third, "the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable." *Id.* The plaintiff bears the burden of satisfying the first two elements while the defendant bears the burden of negating the third. *Id.* All three elements are required for jurisdiction to lie. *Id.*

At the motion to dismiss stage, "the plaintiff bears the burden of demonstrating that the court has jurisdiction" and "need only make a prima facie showing of jurisdictional facts to withstand the motion" when, as here, no evidentiary hearing is held. *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015). The facts alleged in the complaint are generally accepted as true unless controverted by affidavit. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977). But when facts contained in the parties' affidavits conflict, that conflict must be resolved in the plaintiff's favor. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (citation omitted).

## III. ANALYSIS

### A. Purposeful Direction

To meet the first element of the minimum contacts test, the plaintiff must show the defendant "either (1) purposefully availed himself of the privilege of conducting activities in the forum, or (2) purposefully directed his activities towards the forum." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (citation modified). When, as here, a plaintiff's claims sound in tort, courts apply the purposeful direction test. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F. 4th 1085, 1091 (9th Cir. 2023) (applying the purposeful direction test to false advertising and tortious interference claims).

To determine whether a defendant's actions constitute purposeful direction, courts apply the "effects" test developed in *Calder v. Jones*, 465 U.S. 783, 789–90 (1984). The *Calder* test requires that "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433

F.3d 1199, 1206 (9th Cir. 2006) (citation modified). "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects [it] to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). In other words, the relationship between the defendant, the forum state, and the litigation "must arise out of contacts that the defendant *himself* creates with the forum State" and not just "the defendant's contacts with persons who reside there." *Id.* at 284–85 (emphasis in original). Mere foreseeability that the forum will be affected is insufficient to satisfy the *Calder* test—rather, there must be "something more." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 805 (9th Cir. 2004); *Herbal Brands, Inc.*, 72 F.4th at 1092; *accord Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 111 (1987) (plurality opinion).

Chemotechnique contends that removing the two non-actionable puffery statements from the jurisdictional analysis would result in no jurisdiction at all, arguing that the "remaining challenged statements in this case—those relating to FDA approval, pharmaceutical grade quality, availability in the United States, and the properties of Chemotechnique's patch test chambers—were undisputedly made by Dormer, not Chemotechnique." (Doc. 60 at 4–5.)

In response, Smarthealth argues that other material communicated in the product catalogue still supports jurisdiction. According to Smarthealth, the catalogue "unambiguously indicates that CT's products are available for distribution in the United States, featuring the United States on its distribution map." (Doc. 64 at 5.) The catalogue produced by Chemotechnique does, in fact, demarcate the United States as a country "in which Chemotechnique offers local distribution." (Doc. 12-1 at 13.) This messaging, according to Smarthealth, suggests to consumers receiving Chemotechnique's catalogue that its "products were legally available here [in the United States]." (Doc. 64 at 5.) Smarthealth also points out that the catalogue offers Chemotechnique's "North American" and "American Core" series product lines that bundle a select group of products based on recommendations created by groups comprised mostly of U.S.-based physicians, and

Chemotechnique has even noted on its own social media that the "American Core" series is "country-specific." (Doc. 45 at 4–5, 12; Doc. 64 at 5.)

This conduct is "something more" than merely placing its products in the stream of commerce or attending conferences that happen to take place in the jurisdictional forum. These actions were plainly intentional and, when considered together, sufficiently demonstrate that Chemotechnique itself created meaningful contact with the United States by almost annually attending industry-specific U.S.-based gatherings and distributing material that had the natural consequence of encouraging consumers who received the material to believe that the products are tailored for the United States, locally distributed in the United States, and are therefore "legally available" in the United States.[2] This conduct satisfies the *Calder* test that establishes purposeful direction. Accordingly, Smarthealth meets the first element of the minimum contacts test.

**B. Nexus**

To meet the second element of the minimum contacts test, "the claim must be one which arises out of or relates to the defendant's forum-related activities." *Morrill*, 873 F.3d at 1142. This inquiry does not demand "proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 362 (2021). While "[t]he first half of that standard asks about causation . . . [] the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." *Id.* Still, the "relate to" standard "does not mean anything goes," and "relatedness requires a close connection between contacts and injury." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 506 (9th Cir. 2023) (citation modified). In the Ninth Circuit, claims sufficiently relate to a defendant's forum contacts "if similar injuries will tend to be caused by those contacts" or "the

---

[2] On this point, the Court recalls the parties' earlier briefing on Dormer's dismissal motion as to statements implying FDA approval. (*See* Doc. 28 at 6.) Specifically, the parties contested whether Dormer's claim that its allergenic products were "available for distribution in the United States" on its website implied that those products were approved by the FDA. The circumstances of the statement made by Dormer differs from that made by Chemotechnique, but the implied messaging is nonetheless the same: that Chemotechnique's allergenic products are legally available in the United States.

defendant should have foreseen the risk that its contacts might cause injuries like that of the plaintiff." *Id.* at 505–06.

As Chemotechnique itself asserts, "[t]his case is about alleged false advertising" (Doc. 51 at 2), and Smarthealth claims that Chemotechnique's advertisements led physicians and medical professionals to believe Chemotechnique's products are: "(1) legally sold in the United States; (2) proven to be safe and effective; and (3) that the physician and medical personnel legally can seek federal reimbursement for [the] products if prescribed for Medicare patients" (FAC ¶ 86).

As noted above, Chemotechnique's product catalogue indicates that its products, which include at least one product line described as "American Core," are available for "local distribution" in the United States. The Court agrees with Smarthealth that, at least for jurisdictional purposes, this marketing tends to communicate that the products are legally available and relates to Smarthealth's allegations underlying its false advertising claims. Smarthealth satisfies the second element of the minimum contacts test.

### C. Reasonableness

Chemotechnique does not suggest that the Court's analysis of the third minimum contacts element—reasonableness—was manifest error, so the Court will not revisit it. As it did before, the Court finds that Smarthealth meets the third and final element of the minimum contacts test.

## IV. CONCLUSION

Having met the three elements of the minimum contacts test, Smarthealth establishes that subjecting Chemotechnique to an action in the United States "would not offend traditional notions of fair play and substantial justice," *Int'l Shoe*, 326 U.S. at 316, and personal jurisdiction lies here. The Court will set a scheduling conference pursuant to Federal Rule of Civil Procedure 16 by separate order.

**IT IS ORDERED** granting Defendant Chemotechnique's Motion for Reconsideration (Doc. 60).

. . .

**IT IS FURTHER ORDERED** denying Defendant Chemotechnique's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and Joinder in Dormer Laboratories Inc.'s Motion (Doc. 12).

Dated this 8th day of September, 2026.

Honorable John J. Tuchi
United States District Judge